Winfield **THORNTON**, Plaintiff,

v.

**DEEP SEA BOATS, INC.**, an Alabama Corporation, Defendant.

**Civ. A. No. 74–511–T.**

United States District Court,
S. D. Alabama, S. D.

Aug. 12, 1975.

James C. Wood, Mobile, Ala., for plaintiff.

G. Hamp Uzzelle, III, and David A. Bagwell, Mobile, Ala., for defendant.

DANIEL HOLCOMBE THOMAS, Senior District Judge.

The above-styled cause was heard by the Court without a jury and taken under submission on the 29th day of July 1975. At the close of all the evidence, the plaintiff made an oral motion for a directed verdict. Said motion, having been taken under submission by the Court, is now hereby DENIED.

Having considered the testimony, exhibits, stipulations and arguments of counsel, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. This action was brought by the plaintiff to recover damages [1] for injuries which he sustained while in the service of the M/V LADY GLORIA, a steel shrimping vessel owned and operated by the defendant, Deep Sea Boats, Inc. In his complaint, the plaintiff asserts that his injuries resulted from the negligence of the defendant and/or the unseaworthiness of the M/V LADY GLORIA in that at the time of his injuries the vessel was being maneuvered in a negligent manner and was not equipped with any fenders or bumpers. At trial, the plaintiff asserts that, as an additional basis for negligence and unseaworthiness, the handrail on board the M/V LADY GLORIA was improperly designed. In reply, the defendant denies any negligence or unseaworthiness on its part and asserts that the plaintiff's injuries resulted solely from his own negligence.

2. On September 4, 1973, the plaintiff had been employed for approximately one week by the defendant as a deckhand aboard the M/V LADY GLORIA. Prior to this time, the plaintiff had spent some thirty (30) years at sea with the most recent ten (10) years having been in the Bayou La Batre area. Throughout these thirty years, the plaintiff's primary occupation has been that of a shrimper serving mainly as a crewmember and occasionally as a captain of different vessels.

3. At the time of his accident, the plaintiff was assisting Captain Ollie Goleman in moving the M/V LADY GLORIA from its mooring alongside a sister vessel, the M/V COUNTRY GIRL, to one alongside the defendant's dock in order to facilitate the loading of supplies. Due to the narrowness of the channel at this point on the Bayou, Captain Goleman employed a customary procedure of using a spring line from the bow of the M/V LADY GLORIA to the bow of the M/V COUNTRY GIRL in order to throw his stern out into the channel and away from other boats moored directly behind him and thereafter to back around the other boats to a mooring alongside the dock.

4. Captain Goleman directed the plaintiff to release the stern line to the M/V COUNTRY GIRL. With the spring line still secured, Goleman proceeded to maneuver the M/V LADY GLORIA out into the channel by placing his engines forward, rolling his bow along that of the M/V COUNTRY GIRL and then going astern and backing out into the channel. At the proper time, Goleman ordered the plaintiff, who was now stationed forward near the wheelhouse door, to release the spring line but to remain where he was and watch the outriggers on the two boats so as to insure that they did not become entangled. On the first attempt, the wind and tide pushed the M/V LADY GLORIA back in towards her sister ship. Goleman again pulled forward in order to throw his stern further out into the channel. At this point, the plaintiff was holding on to the handrail along the port side of the vessel and looking over his shoulder at the outriggers. As the vessel pulled forward the plaintiff's hand was squeezed between the handrails on the two vessels. This crushing type injury necessitated amputations through the distal portion of the middle phalanx of the plaintiff's middle and ring fingers.

5. The maneuver used by Captain Goleman is a customary procedure used by the defendant's captains, as well as others in the Bayou La Batre area, when leaving a moorage under conditions similar to this case. It is also not unusual for a captain to have to pull forward a second time in such a maneuver.

6. On September 4, 1973, there were no fenders or bumpers on the M/V LADY GLORIA. Fenders or bumpers are sometimes placed across the stern and along the aft sides of shrimping vessels, but it is also not uncommon for

---

1. No claim is asserted for maintenance and cure which have already been provided the plaintiff.

shrimping vessels similar to the M/V LADY GLORIA to have no fenders or bumpers. Fenders or bumpers are not customarily used along the forward areas of such vessels because this area of the vessel curves in towards the bow and bumpers or fenders in such areas would be of no benefit. The purpose for which fenders and bumpers are designed when used on shrimpers is to avoid damage to the vessels when tied alongside docks or other vessels. Additionally, even if the M/V LADY GLORIA had had fenders or bumpers, their presence would not have avoided the injuries to the plaintiff which occurred near the wheelhouse door at a point where the suggested fenders or bumpers would not have prevented the two vessels from touching.

7. At the time of plaintiff's accident, no equipment on board the M/V LADY GLORIA failed to function properly so as to cause his injuries. The plaintiff, however, asserts that the design of the handrail used by him was defective in that it was not set far enough inboard of the vessel's bulwarks to prevent injuries such as sustained by him.[2] The vessel's handrails were constructed in the manner customarily employed on shrimp boats similar to the M/V LADY GLORIA. Furthermore, the handrails were reasonably fit for the use for which they were intended, i. e., to provide something for seamen to grab onto when in rough weather at sea. Even though a better design might have been achievable, the design of the handrails onboard the M/V LADY GLORIA was not defective and did not render the vessel unseaworthy.

8. During cross-examination at trial, the plaintiff testified that he had only a few days earlier been aboard the M/V LADY GLORIA and had noticed no fenders or bumpers on the vessel, that had he been the captain of the M/V LADY GLORIA he would have moved the vessel in the same manner as did Captain Goleman, and that it was not uncommon for boats to rub together during such maneuvers. The plaintiff further stated that, at the time of his accident and although he was concentrating on the outriggers, he could tell that the vessel was moving forward for the second time, that he did not realize that the two vessels were as close to each other as they were but that, if he had so realized, he would have moved his hand.

9. In summation, the Court finds that the plaintiff has introduced no evidence of negligence on the part of the defendant or any of its agents and that the M/V LADY GLORIA was not unseaworthy either in her lack of fenders or bumpers or in the design of her handrails. The Court further finds that the injuries sustained by the plaintiff were caused solely by his own negligence in failing to keep his hands inboard of the vessel during a maneuver which would frequently, if not necessarily, cause his vessel to rub against another vessel.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter based upon its admiralty and maritime jurisdiction. 28 U.S.C. § 1333. The plaintiff herein seeks damages for negligence under the Jones Act, 46 U.S. C. § 688, and for unseaworthiness under general maritime law.

 2. In order to be entitled to a recovery for damages under the Jones Act for negligence, the plaintiff must bear the burden of proving that negligence on the part of the defendant or its agent was a proximate cause of his injuries. *Kanishcher v. Irwin Operating Co.*, 215 F.2d 300, 1954 AMC 1812 (5th Cir. 1954), *cert. den.* 348 U.S. 942, 75 S.Ct. 363, 99 L.Ed. 737. The Court is of the opinion that the plaintiff has failed to meet this burden and therefore has no claim for recovery under the Jones Act.

---

2. Plaintiff testified at trial that the handrails were directly above the vessel's bulwarks and did not lean inboard. However, from an inspection of Plaintiff's Exhibits 1–7, it would appear that the handrails do at least slightly lean inboard of the bulwarks.

**936**

3. Although the duty of an owner to furnish a seaworthy vessel is absolute, the mere fact that a seaman is injured in an accident on the vessel is not sufficient, in and of itself, to establish unseaworthiness and consequent liability. The owner does not have to provide an accident-free vessel.

(I)t is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L. Ed.2d 941 (1960).

4. For a vessel to be found unseaworthy when an injury has occurred, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used. *Gutierrez v. Watterman S. S. Corp.*, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); *Bowser v. Lloyd Brasileriro S. S. Co.*, 417 F.2d 779 (5th Cir. 1969). The Court is of the opinion that the plaintiff has failed to establish that the defendant's vessel was unseaworthy either in her lack of fenders or bumpers, in the design of her handrail or in her handling by the crew. Although in maritime personal injuries the doctrine of comparative negligence governs, the shipowner cannot be held liable for damages where, as under the facts of this case, the plaintiff's injuries result solely from his own negligence. *Taylor v. S. S. Helen Lykes*, 402 F.2d 777, 1968 AMC 422 (5th Cir. 1968).

A decree will be entered accordingly.

### JUDGMENT

This cause having come on for final hearing on the pleadings and proof of the respective parties and having been taken under submission and the Court after due deliberation having now entered its Findings of Fact and Conclusions of Law, it is ORDERED, ADJUDGED and DECREED by the Court that a Judgment should be and hereby is entered in favor of the defendant and against the plaintiff.

Costs taxed against the plaintiff.